IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**VALERIE JO BOYD**                                                                  **PLAINTIFF**

NO. 3:12-CV-00113-BD

**CAROLYN W. COLVIN, Acting Commissioner,**                          **DEFENDANT**
**Social Security Administration**

## ORDER AFFIRMING THE COMMISSIONER

Valerie Jo Boyd sought judicial review of the denial of her applications for disability insurance benefits and supplemental security income. Ms. Boyd based her disability claims on bone disease in her back, deteriorating bone disease in both knees, migraines, panic disorder, and depression.[1] She alleged that these conditions affected her abilities to lift, stand, walk, sit, climb stairs, kneel, squat, bend, remember, concentrate, and comprehend.[2] Trained as a certified nursing assistant, Ms. Boyd last worked in 2005, as a housekeeper for a nursing home.[3]

Ms. Boyd initially alleged she became disabled on October 15, 2004 — at age 40.[4] She then amended her onset date to January 1, 1977 — to allege disability beginning at age 12. During her hearing, she amended her onset date to March 1, 2008 — to allege

---

[1] SSA record at p. 133.

[2] *Id*. at p. 161.

[3] *Id*. at pp. 133-34 & 141.

[4] *Id*. at p. 105 & 110.

disability beginning at age 43.[5] The latter date was based on the denial of Ms. Boyd's first applications.[6]

**The Commissioner's decision**. After considering Ms. Boyd's applications, the Commissioner's ALJ determined that Ms. Boyd had severe impairments — back pain, knee pain, and depression/anxiety disorder[7] — but that she had the residual functional capacity (RFC) to perform a reduced range of light work.[8] Because the vocational expert identified jobs a person with Ms. Boyd's RFC could do,[9] the ALJ concluded that Ms. Boyd was not disabled under the Social Security Act and denied the applications.[10] After the Commissioner's Appeals Council denied Ms. Boyd's request for review,[11] the

---

[5]*Id*. at p. 46.

[6]*Id*. at p. 127 (prior claim denied on Feb. 29, 2008).

[7]*Id*. at p. 15.

[8]*Id*. at p. 17 (imposing the following restrictions: (1) occasional climbing/balancing/stooping/crouching/kneeling and crawling; and (2) work in which interpersonal contact is incidental to work performed, the complexity of tasks is learned and performed by rote, few variables, and little judgment required, and the supervision is simple, direct and concrete).

[9]*Id*. at p. 49 (identifying industrial cleaner, like a motel maid, as available work).

[10]*Id*. at p. 23. The unfavorable decision stated that the ALJ applied Medical-Vocational Guidelines Rule 202.22, but the ALJ's reasoning shows the ALJ's relied on vocational expert testimony in denying the applications.

[11]*Id*. at p. 1.

ALJ's decision became a final decision for judicial review.[12]  Ms. Boyd filed this case to challenge the ALJ's decision.[13]  In reviewing the decision, the court must determine whether substantial evidence supported the decision and whether the ALJ made a legal error.[14]

**Obesity**.  Ms. Boyd first maintains that the ALJ should have identified obesity as a severe impairment at step two of the disability-determination process.[15]  Step two requires the claimant to show she has a severe impairment, but it does not require the ALJ to explicitly discuss every impairment in an administrative opinion.

Step two directs a conclusion of "not disabled" if the claimant fails to prove a severe impairment such that the process weeds out claimants whose abilities to work

---

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[13]Docket entry # 2.

[14]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[15]Docket entry # 12, p. 23.

are not significantly limited.[16] The process favors the claimant because the Commissioner's regulations permit her to meet her burden by relying on the combined effect of all of her impairments, without regard to whether any particular impairment, if considered separately, is of sufficient severity.[17] If the claimant meets her burden, the regulations permit her to proceed to the next step of the process. If the claimant meets her step-two burden, there can be no reversible error where the record shows that the ALJ considered all of the medical evidence and all of the claimant's impairments.

Ms. Boyd met her step-two burden and proceeded to the next step of the process. The record shows that the ALJ considered all of the medical evidence and all of Ms. Boyd's impairments, including obesity, because the ALJ included obesity in questioning the vocational expert.[18] Thus, even if obesity was a severe impairment, Ms. Boyd cannot show reversible error because the ALJ considered obesity in reaching the unfavorable decision.

---

[16]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

[17]20 C.F.R. § 404.1523 (DIB); 20 C.F.R. § 416.923 (SSI).

[18]*See* SSA record at p. 49 (including obesity in the hypothetical question. *See also* p. 22 (including the hypothetical question in the unfavorable decision).

**Back and knee pain**.  Ms. Boyd next complains that the ALJ should have ordered a consultative physical examination rather than rejecting her claims of pain.[19]  "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."[20]  The medical records presented to the ALJ provided sufficient medical evidence to determine whether Ms. Boyd was disabled.

When asked what prevented her from working, Ms. Boyd identified pain in her back and knees.[21]  Radiographic imaging and treatment records were probative of this claim, but neither supported the claim.

An Xray of Ms. Boyd's left knee showed a normal knee.[22]  An MRI of Ms. Boyd's lumbar spine showed "[m]ild chronic dessication and posterior facet arthropathy at levels L4-S1" — *i.e.*, degenerative changes — but "[n]o significant spinal or neuroforaminal stenosis…."[23]  The characterization of degenerative changes as "mild"

---

[19]Docket entry # 12, p. 22.

[20]*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994).

[21]SSA record at p. 42.  *See id*. at p. 151 (alleging pain in back and knees "all the time").

[22]*Id*. at p. 506 ("Essentially negative examination.").

[23]*Id*. at p. 237.

suggested no reason for disabling pain.[24]  Likewise, the absence of any significant stenosis suggested no reason for disabling pain.[25]

Treatment records documented only emergency care; Ms. Boyd sought no routine care.  She did not complain about back or knee pain during emergency room visits.[26]  Failing to seek treatment for back and knee pain established no need for a consultative examination.

To the extent Ms. Boyd maintained back and knee pain prevented her from working,[27] the ALJ accounted for back and knee pain by limiting Ms. Boyd to occasional climbing, balancing, stooping, crouching, kneeling and crawling.  The medical

---

[24]*See* 1-12 Courtroom Med. - The Low Back § 12.20 (explaining that spinal disc degeneration is not necessarily painful).

[25]*See* Anthony Woodward, M.D., 4 Attorneys' Textbook of Med. 11.50 (3d ed.) (discussing how back pain arises from nerve root involvement from "foraminal stenosis or from neurogenic claudication secondary to central stenosis"); Mary Jeanne Krob, M.D. & Laura Brasseur, 5 Attorneys' Textbook of Med. 15.30 (3d ed.) (explaining that protruded discs may not cause pain unless "there is some degree of spinal stenosis or disc impingement on neural tissues").

[26]*See* SSA record at p. 613 (for headaches, nausea and vomiting on Oct. 22, 2009); p. 602 (for arm pain after dog bite on Mar. 7, 2010); p. 591 (for fever, cough and congestion on Mar. 14, 2010); p. 585 (for reaction to bronchitis medication on Apr. 18, 2010); p. 579 (for depression, chest pain and left arm pain on Apr. 20, 2010); p. 625 (for depression on Jan. 17, 2011).  *See also* pp. 167 & 176 (reporting no change in condition and no medical treatment, on Oct. 17, 2009 and Oct. 28, 2009); p. 42 (testifying that her only treatment was Advil liquid).

[27]Docket entry # 12, p. 22 (relying on degenerative disc dessication in asserting that the ALJ erred in finding she could perform light work).

consultant opined that Ms. Boyd could do medium work — without postural limitation[28] — but the ALJ responded to Ms. Boyd's complaints by reducing the range of work and including postural limitations. No medical evidence provided a basis for further reduction.

**Mental impairment**. Ms. Boyd further complains that the ALJ under-estimated the severity of her mental impairments in determining her RFC.[29] "In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the…mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments."[30] The competent medical evidence in this case supported the ALJ's determination of Ms. Boyd's RFC.

Although Ms. Boyd identified mental impairment as a secondary reason for seeking disability,[31] the psychological examiner reported problems in the ability to sustain concentration in reciting digits backward and to complete tasks in a timely

---

[28]SSA record at p. 543 (owing to medical evidence of degenerative disc disease without radiculopathy and normal neuromuscular function, and knee pain, RFC is medium work); p. 576 (affirming earlier opinion for medium work).

[29]Docket entry # 12, pp. 19-21.

[30]*Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

[31]SSA record at p. 547 (reporting to the psychological examiner that her reasons for seeking disability were mainly physical); p. 42-43 (testifying that mainly her back and knee prevented her from working, but identifying panic attacks as another reason).

manner. The examiner opined that Ms. Boyd had adequate communication skills and the capacity to cope with mental cognitive work demands.[32]

The psychological consultant opined that Ms. Boyd could do "at least" unskilled work, in which interpersonal contact is incidental to the work performed, *e.g.*, assembly work; the complexity of tasks is learned by rote, with few variables and little judgment; and the supervision required is simple, direct and concrete.[33] The ALJ incorporated those limitations in Ms. Boyd's RFC. A reasonable mind would accept the examiner's findings and the consultant's opinion as adequate to support the ALJ's RFC determination. Thus, substantial evidence supports the ALJ's determination.[34]

In addition, the medical evidence showed that Ms. Boyd's anxiety and depression could be controlled by treatment. "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."[35] Ms. Boyd sought episodic, emergency-room care for depression and anxiety,[36] but she had no routine

---

[32]*Id*. at p. 550.

[33]*Id*. at p. 568.

[34]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (internal citation omitted).

[35]*Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (citation omitted).

[36]SSA record at p. 579 (Apr. 20, 2010) & p. 625 (Jan. 17, 2011).

care. At the last emergency room visit, Ms. Boyd was admitted for psychiatric care.[37] She was stabilized with psychotropic drugs and discharged three days later with a recommendation for out-patient treatment.[38] Improvement after three days of treatment showed that Ms. Boyd's depression and anxiety could be controlled by treatment. Thus, Ms. Boyd's mental impairment cannot be considered disabling.

To the extent Ms. Boyd relied on periodic panic attacks as a basis of disability, the frequency of panic attacks did not negate the ability to work. In February 2011, Ms. Boyd testified that her last panic attack was 10 months earlier — in April 2010. A panic attack every 10 months does not prevent a person from working. The ALJ did not under-estimate Ms. Boyd's mental impairment. Instead, the ALJ appropriately reduced the range of work.

**Conclusion**. Substantial evidence supported the ALJ's decision denying Ms. Boyd's applications. The ALJ made no legal error. For these reasons, the court DENIES Ms. Boyd's request for relief (docket entry # 2) and AFFIRMS the decision denying the applications.

---

[37]*Id*. at p. 626 (discharge report summarizing course of treatment).

[38]*Id*. at p. 627 (stating three days after treatment, Ms. Boyd had improved and reported no panic attacks).

It is so ordered this 3rd day of April, 2013.

                                                  _____
                                                  UNITED STATES MAGISTRATE JUDGE